UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 06-11053-GAO

JENNY RUBIN, et al.,
Plaintiffs—Judgment Creditors,

v.

THE ISLAMIC REPUBLIC OF IRAN, et al.,
Defendants—Judgment Debtors,

v.

MUSEUM OF FINE ARTS and HARVARD UNIVERSITY, et al.,
Trustee Process Respondents.

OPINION AND ORDER
September 15, 2011

O'TOOLE, D.J.

The plaintiffs, having obtained a default judgment against the Islamic Republic of Iran ("Iran") and others, moved to attach by trustee process various antiquities currently in the possession of the Museum of Fine Arts and Harvard University (collectively, the "Museums") that the plaintiffs have alleged to be the property of Iran. The Museums have responded that any antiquities in their possession are not the property of Iran subject to attachment and have moved to dissolve the attachments.

I have previously ruled that the antiquities at issue here are immune from execution and attachment under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1609, 1610, but that the plaintiffs might nevertheless be able to reach those items pursuant to § 201 of the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107-291, 116 Stat. 2322, note

following 28 U.S.C. § 1610, as "blocked assets" of Iran. (See March 31, 2008 Order 3 (dkt. no. 92); Sept. 30, 2006 Order 3-11 (dkt. no. 71).) Section 201(a) of TRIA provides that, where a person obtains a judgment against a terrorist party for a claim based on an act of terrorism, the "blocked assets of that terrorist party" are subject to execution or attachment to satisfy such judgment. TRIA § 201(a), 116 Stat. at 2337.

While TRIA does not provide a specific mechanism to effect such execution and attachment, Rule 69 of the Federal Rules of Civil Procedure provides for resort to state-law procedures and remedies. Fed. R. Civ. P. 69. The plaintiffs invoked Massachusetts procedures by their original Motion for Order of Attachment by Trustee Process. (See Pls.' Mot. for Order of Attachment by Trustee Process 2 (dkt. no. 2).)

Chapter 246 of the Massachusetts General Laws provides that "the goods, effects or credits of the defendant" in the possession of a trustee may be "attached and held to respond to the final judgment," M.G.L. c. 246, § 20, and that the trustee must deliver the attached property "to the officer holding the execution" who shall sell the property and apply and account for the proceeds, M.G.L. c. 246, § 57. Importantly, the burden is on the creditor applying for attachment to show that the trustee does in fact hold "goods, effects or credits" of the defendant. See Jordan Marsh Co. v. Hale, 107 N.E. 357, 358 (Mass. 1914) ("In a trustee process, the burden of proof is upon the plaintiff to show that the trustee has in his possession goods, effects or credits of the principal defendant."); accord Porter v. Stevens, 63 Mass. (9 Cush.) 530, 535 (1852) ("[T]he alleged trustee is not to be assumed to be trustee" but, rather, "it is for the plaintiff to prove his allegation, not for the defendant trustee, to disprove it."). There is no reason, textual or otherwise, to conclude that TRIA shifts this burden of proof away from the plaintiff. See Pub. L. No. 107-291, 116 Stat. 2322.

In the present case, the plaintiffs have not shown that the "goods, effects, or credits" at issue here are property "of the defendant" Iran. There can be no serious dispute that the phrase "of the defendant" means "belonging to the defendant." The fundamental purpose of a trustee process is to attach and sell property of the defendant that may be held by another in order to satisfy a judgment against the defendant. See M.G.L. c. 246, §§ 20, 57; Van Camp Hardware & Iron Co. v. Plimpton, 54 N.E. 538, 538 (Mass. 1899) ("The object of the trustee process is to enable a creditor to attach goods or credits of his debtor in the hands of a third person."); see also Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc., --- U.S. ----, 131 S.Ct. 2188, 2196 (2011) (interpreting "invention of the contractor" according to a "natural reading" of the phrase to mean "invention belonging to the contractor" or "invention owned by the contractor" because "[t]he use of the word 'of' denotes ownership.") (internal citations and quotations omitted).

Despite extensive discovery, the plaintiffs are unable to sustain their burden of showing that any particular item held by the Museums is the property of Iran subject to execution by means of trustee process. It is not enough simply to show that antiquities held by the Museums originated from sites within Iran. Their appeal to certain provisions of Iranian law is also futile.

For example, the so-called "1930 Law" they cite does not automatically vest ownership of excavated antiquities in the government of Iran. In the first place, the 1930 Law does not on its face purport to vest ownership of excavated antiquities in the government. Moreover, the 1930 Law clearly contemplates that antiquities may be owned by private persons. (See Aff. of Katirai Ex. X Articles 3, 5, 7 (dkt. no. 156-4).). Additionally, other courts have concluded that the 1930 Law permits private ownership and is inconsistent with automatic government ownership of all antiquities originating from Iran. Gov't of the Islamic Republic of Iran v.

Barakat Galleries, Ltd., [2007] EWHC (Q.B.) 705, [44, 50, 59], 2007 WL 919380, rev'd on other grounds [2007] EWCA (Civ) 1374; see also Gov't of the Islamic Republic of Iran v. Barakat Galleries, Ltd., [2007] EWCA (Civ) 1374, [58], [2009] Q.B. 22, 2007 WL 4368237 ("[T]he provisions of [the 1930 Law are] incompatible with . . . [the] broad proposition that all antiquities were owned by the State.").[1]

Similarly, Article 26 of the 1928 Civil Code does not make the sort of antiquities at issue here (much less any particular item) the property of the government of Iran. That Article provides that certain government property may not privately be owned. (See Aff. of Meshki Ex. C Article 26 (dkt. no. 171-3).)[2] The Article addresses governmental buildings, facilities, infrastructure, and other property "in use by the Government for the service of the public or the profit of the state." The plaintiffs have not shown that any of the antiquities now held by the Museums were at the time of removal from Iran "Government property . . . in use for the service of the public or the profit of the state." The necessary conclusion cannot be drawn simply from the fact that the items are the products of archeological explorations that were conducted in Iran, and the plaintiffs have shown no other basis for such a finding.

---

[1] Two further aspects of the 1930 Law should be noted. First, Article 17 provides that exporting antiquities requires a government permit. (Aff. of Katirai Ex. X Article 17.) However, an inability to produce such a permit after exportation does not itself prove an unlawful exportation of antiquities, especially where, as here, decades have passed since that exportation. Article 17 does not shift the burden of proof to the defendant. Second, the 1930 Law articulates certain obligations for people in possession of antiquities. (See id. Articles 3, 5, 6, 17.) Such obligations, however, do not demonstrate that these items belonged to Iran; rather, they establish rules to be followed by even private owners of Iranian antiquities.

[2] Article 26 states in full: "Government property which is susceptible for the public service and welfare such as fortifications, fortresses, moats, military earth works, arsenals, weapons, stores, warships and similarly the furniture and buildings of the Government build[i]ngs and telegraph wires, museums, public libraries, historical monuments and similar objects, in brief whatever property movable or immovable is in use by the Government for the service of the public or the profit of the state, may not privately be owned. And the same provisions shall apply to property which shall have been appropriated for the public service of a province, city or a region or a town." (Aff. of Meshki Ex. C Article 26.)

The plaintiffs' specific argument that items taken from the ruins of the ancient city of Persepolis cannot be privately owned is also not persuasive. The legal argument relies heavily on Article 26 which, as just noted, does not support a generalized conclusion that excavated items necessarily belonged to the government of Iran. The plaintiffs point to texts suggesting that foreign excavators unlawfully took items from Persepolis. Even if that is true as an historical matter, it does not get the plaintiffs where they need to go. As a general matter, establishing that a particular item was unlawfully exported or removed from Iran is not equivalent to showing that it now should be regarded as property of Iran subject to levy and execution. And as a particular matter, the plaintiffs simply are unable to establish that any item in the possession of the Museums, whether from Persepolis or elsewhere, is rightly considered to be the property of Iran.[3] In sum, the plaintiffs have failed to demonstrate that antiquities that originated from the territory that is now Iran are the property of the judgment debtor Iran.

Accordingly, the plaintiffs' Motion (dkt. no. 2) for Order of Attachment by Trustee Process is DENIED; Harvard's Motion (dkt. no. 150) to Dissolve Attachment is GRANTED; and the Museum of Fine Arts' Motion (dkt. no. 158) to Dissolve Attachment is GRANTED. The trustee attachments are DISSOLVED.

It is SO ORDERED.

    /s/ George A. O'Toole, Jr.
United States District Judge

---

[3] It is worth noting that the claim of Iran's ownership of the antiquities is made by the plaintiffs here, but no such claim has been made by Iran itself.